IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02853-DDD-NRN

ARMANDO RUBIO FLORES,
ALFONSO ANGELES HERNANDEZ,
ISRAIN HERNANDEZ JACOBO,
Individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

J & T HARVESTING LLC,
MARIA DIANA OLIVAREZ MILLS (aka DIANA OLIVAREZ RAMON, DIANA OLIVARES, DIANA RAMON), Individually,
JOHN JEFFREY RAMON, Individually,
TATIANA BRAVO Individually,
MOUNTAINKING POTATOES, INC.,
FARMING TECHNOLOGY, INC. d/b/a MOUNTAINKING POTATOES, INC.,
FARMING TECHNOLOGY CORPORATION d/b/a MOUNTAINKING POTATOES, INC.,
SMOKIN-SPUDS, INC. d/b/a MOUNTAINKING POTATOES, INC., and
ALPINE POTATO COMPANY,

    Defendants.

---

### ORDER ON MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE (ECF No. 50)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

    This matter comes before the Court on Plaintiffs' Motion for Conditional Certification of Collective Action and Court Authorized Notice ("Motion" or "Motion for Conditional Certification"), filed July 2, 2025. ECF No. 50. Defendants objected to the proposed notice and means of notice in a filing submitted on August 1, 2025. ECF No. 58. The Court heard argument on the Motion for Conditional Certification on August 22, 2025. *See* ECF No. 65. At the hearing, all parties agreed that the conditional

certification should be granted and on the form of the notice. What was *not* agreed to was the proposed *method* of notice or the *length of time* that would be granted for potential collective members to opt-in. The Court stated that it would grant the Motion for Conditional Certification and take under advisement the method and the issue of the length of time for opt-ins. *Id.*

This action arises from Defendants' employment of the named Plaintiffs and numerous others in Colorado's San Luis Valley. Plaintiffs' claims include forced labor, discrimination, exploitation, and wage theft as part of an illegal scheme to procure cheap labor. Pertinent to the pending Motion, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, by paying them, and others similarly situated, less than the minimum wage. ECF No. 46 ¶¶ 292–302. The Second Amended Complaint alleges that Plaintiffs were among hundreds of workers brought to Colorado by Defendants J&T Harvesting LLC, Maria Diana Olivarez Mills, John Jeffrey Ramon, and Tatiana Bravo (collectively, "J&T Defendants") to work at potato packing facilities owned and operated by Defendants MountainKing Potatoes, Inc., Farming Technology, Inc., Farming Technology Corporation, and Smokin-Spuds, Inc. (collectively, "Smokin-Spuds Defendants") from 2022 through 2024.

The putative opt-in collective action members similarly situated to Plaintiffs (also referred to as "J&T Workers") consist of all individuals recruited by J&T Defendants and brought to Colorado to work at Smokin-Spuds Defendants' facilities at any time between September 1, 2022 through 2024, including those admitted to the United States on H-2A visas acquired by J&T Defendants, and those recruited by J&T Defendants from within the United States.

2

Section 216(b) of the FLSA authorizes trial courts to provide that court-approved notice be sent to potential collective action members to inform them of an action and allow them an opportunity to opt in. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 169–72 (1989). The benefits of the collective action procedure "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. at 170. For former and current J&T Workers who worked for Defendants to opt-in, they need to be informed of the pending action.

The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action. An FLSA notice should describe the nature of the FLSA collective action and offer the recipient the opportunity to 'opt in' to the action by filing a consent form. The Court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. This discretion requires a court to ensure that the notice is "fair and accurate."

Defendants do not object to conditional certification of the putative collective action at this first stage. They have also now agreed on the form of the Notice. But they do object to certain of the proposed methods of delivering the Notice. Defendants do not object to distribution of the Notice via mail, email, and text message. Nor do they object to posting of the Notice and Opt-In Forms in areas readily and routinely available for review by potential collective action members, such as worksite and housing. (Although Smokin-Spuds Defendants say they have sold their Colorado facilities to a non-party entity and no longer have any interest in or control of those facilities. *See id.* at 6.)

Defendants also do not object to including a copy of the Notice and Opt-In Forms "in the pay envelopes of all putative collective action members who are currently working with or for Defendants." Per Smokin-Spuds Defendants, no putative class members have performed work for them since 2024.

Defendants *do* object to Plaintiffs' following proposed forms of notice: (6) posting of announcements on social media; (7) running of radio announcements in the hometowns of the potential collective action members; (8) contacting Mexican government officials in those towns (as well as the Mexican Consulate in Denver); (9) publishing the Notice in newspapers; and (10) sending the Notice and Opt-In Form to non-profit organizations and churches in those towns "or others" who may come into contact with potential collective action members.

Among other objections, Defendants assert that Plaintiffs have not shown that the initial five methods of notice are insufficient to properly reach and notify the putative class members. Defendants also argue that the Court should be cautious of distribution methods that potentially could distort the notice approved by the Court or compromise the integrity of the notice process. To the extent that Plaintiffs will be running radio announcements or newspapers publications in Mexico (but fail to provide details regarding where these will run or what the announcements will say), Defendants are concerned that that it will be "virtually impossible" for them to confirm that the information authorized by the Court is actually what is being disseminated. In addition, Defendants argue that the extra-territorial nature of the method means the Court would have no authority to control what is disseminated or "curtail abuses that may be discovered." *Id.* at 9. Defendants make the same complaint about making

4

announcements via social media, with such postings posing a risk of compromising the integrity of both the notice and the process. Defendants contend that such postings "can be copied and shared by anyone; and no one has the ability to control what third parties may add or opine about the notice/case upon it being shared." *Id.*

Plaintiffs argue persuasively that more creative alternative forms of notice—in addition to regular mail, email and text message—are required under the unusual and difficult circumstances of this case. The putative collective members are transient and/or transnational. Defendants do not have physical addresses for collective members who may have moved back to Mexico or have moved elsewhere within the United States. Plaintiffs argue that if Defendants' proposed limits on the means of dissemination of the notice were accepted, "zero putative members would receive notice of the instant litigation." ECF No. 61 at 6. Plaintiffs cite, among other cases, *Beltran v. InterExchange, Inc.,* No. 14-cv-03074-CMA-CBS, 2017 WL 441684 (D. Colo., April 28, 2017), where the court authorized an FLSA notice sent to former *au pair* nannies, all of whom were from overseas, who had been recruited to come to the United States and allegedly paid unlawfully low rates for their *au pair* services. The *Beltran* court authorized distribution of the notice via electronic means, including social media platforms like Facebook, over the objection of the defendants, who argued only for mail and email. The court reasoned that electronic notice through social media platforms is "particularly appropriate" for classes comprised of young, largely transient unnamed plaintiffs for whom email addresses and physical addresses may not provide a reliable, durable form of contact. 2017 WL 4418684, at *6.

5

Plaintiffs also cite *Martinez-Morales v. Lopez*, No. 5:22-CV-187-BO, 2023 WL 3476158 (E.D.N.C, April 14, 2023), which involved a FLSA collective suit brought by Mexican H-2A workers who had traveled to the defendant's North Carolina farm. In that case, the Court authorized notice via text, WhatsApp; social media, including but not limited to Facebook; posting on a website; notification and provision of the notice and forms to the Mexican Consulate; and radio in Mexico. 2023 WL 3476158, at *3. In that case, as in this case, the putative collective members included low-income, Spanish-speaking migrant workers who may have returned to Mexico. The Court finds that Plaintiffs have the better argument here and the supposed danger of distorting the message if non-traditional means of dissemination are used is overblown.

After considering the arguments of the Parties, the Court approves the Notice that has been agreed to by the Parties—found at **ECF No. 61-1**.[1]

In terms of the length of the notice period, Plaintiffs request a six-month notice period before the opt-in deadline. Defendants prefer a three-month notice period. Recognizing that many of the putative collective action members may have returned home outside of the United States, and there may be language difficulties in translating the Notice to Spanish, or comprehending the Notice, the Court concludes that a **five-month** notice period should be sufficient. The opt-in deadline will therefore be five months from the sending of the notice.

As to the method of notice, the Court agrees with Plaintiffs that Plaintiffs' more creative ways of giving notice, contacting newspapers, radio stations, through social media, or through Mexican government officials, such as the Mexican Consulate in

---

[1] Plaintiffs' counsel will need to include the specific dates.

6

Denver, are necessary to maximize the probability that members of the collective are actually informed of their right to participate. This outweighs any potential risk to the integrity of the notice process or the potential for abuse. Therefore, the Court will approve those methods of notice proposed by the Plaintiffs. Notice can be given via mail, email, and text message, and by posting the Notice and Opt-In Forms in areas readily and routinely available for review by potential collective action members, such as worksite and housing. Notice may also be included "in the pay envelopes of all putative collective action members who are currently working with or for Defendants." Also approved is notice via posting of announcements on social media; running of radio announcements in the hometowns of the potential collective action members; contacting Mexican government officials in those towns (as well as the Mexican Consulate in Denver); publishing the Notice in newspapers; and sending the Notice and Opt-In Form to non-profit organizations and churches in those towns or others who may come into contact with potential collective action members. A necessary and required pre-condition to these alternative means of notice is that Plaintiffs must keep a record of what is posted or communicated and where. So, Plaintiffs must keep a list of any newspaper advertisements and in which newspapers, to which radio stations the Notices were given, what Mexican government officials were provided the Notice and the form of notice, and on which social media platforms the Notice appeared. Prior to the opt-in date, Plaintiffs shall file a certification listing the alternative forms of notice used, what organizations were provided the Notice, and describing how notice was effectuated (or attempted to be effectuated) via these alternative methods.

Plaintiffs also ask for authorization to give individuals receiving the notice and opt-in consent form electronically (via text message or email) the option to sign their forms electronically. This is appropriate and sensible and is approved. For contacting putative plaintiffs by text message, Plaintiffs ask to be able to send a "truncated" Notice, which will contain links to electronic versions of the approved Notice and Opt-In Form. *See* proposed Truncated Notice, ECF No. 50 at 12. This is also approved and authorized.

For the foregoing reasons, it is **HEREBY ORDERED** that the Court:

1. Grants in part the Plaintiffs' Motion for Stage-One Conditional Certification of FLSA Collective Action and Notice to Members of the Plaintiff Class. ECF No. 50.

2. Conditionally certifies a collective action class pursuant to 29 U.S.C. §216(b) consisting of all "individuals recruited by J&T Defendants and brought to Colorado to work at Smokin-Spuds Defendants' facilities at any time between September 1, 2022 through 2024, including those admitted to the U.S. on H-2A visas acquired by J&T Defendants and those recruited by J&T Defendants from within the United States."

3. Approves the proposed Notice found at ECF No. 61-1. The Court also approves the Opt-In Consent Form submitted by Plaintiffs as ECF No. 50-2.

4. Approves an opt-in schedule allowing for five months from the date of the sending of the Notice. Plaintiffs shall file a notification with the Court informing the Court of the date the Notice is sent and specifying the date, five months thereafter, for the opt-in deadline.

5. To the extent the information has not already been provided, directs Defendants, within fourteen (14) days of this Order, to provide to Plaintiffs' counsel in Excel (.xlsx) format the following information regarding all Putative Class Members: full name; last known address(es) with city, state, and ZIP code; last known e-mail address(es) (non-company address if applicable); last known telephone number(s); beginning date(s) of employment; and ending date(s) of employment, if applicable (the "Class List").

6. Directs Defendants, also within fourteen (14) days of this Order, to provide to Plaintiffs' counsel a declaration, jointly drafted and agreed upon by the Parties, from Defendants' representative(s) that compiled the Class List that attests to: a) the accuracy and completeness of the Class List; b) describing the specific tasks and efforts undertaken to compile the Class List; and c) describing the sources from which the class contact information was gleaned. Defendants shall provide the declaration concurrent with production of the Class List.

7. Directs Plaintiff, no later than fourteen (14) days after receipt of the Class List from Defendants, to effectuate notice via U.S. Mail, email, and text message, and the other described alternative methods, using the approved Notice and Opt-In Form. Plaintiffs shall keep a record of all alternative forms of notice and provide a certification to the Court prior to the opt-in date describing the alternative forms of notice, and identifying organizations, entities, or individuals to whom alternative notice was provided (such as social media sites, Mexican government officials, and churches or other organizations in Mexican towns where putative class members may live).

8. Sets a deadline of five months from Plaintiffs' mailing of Notice for Putative Class members to opt-in via returned signed consent forms. Plaintiffs shall tender reminder Notices forty-five (45) days before the opt-in deadline.

9. Directs Defendants to produce to Plaintiffs' counsel all time and payroll records pertaining to the Opt-In Plaintiffs, as well as any other documents Defendants believe are pertinent to the claims and calculation of alleged damages, including any documents Defendants will utilize to defend Plaintiffs' claims, within fourteen (14) days of the electronic filing of any such consent form.

Dated this 21st day of October, 2025.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge